# Ex. A

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 6, 2020        Decided July 14, 2020

No. 18-7188

STRIKE 3 HOLDINGS, LLC,
APPELLANT

v.

JOHN DOE, SUBSCRIBER ASSIGNED IP ADDRESS 73.180.154.14,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01425)

———

*Lincoln D. Bandlow* argued the cause for appellant. With him on the briefs were *Jessica Fernandez* and *Emilie Kennedy*.

*Seth W. Lloyd*, appointed by the court, argued the cause as *amicus curiae* in support of the District Court's order. With him on the brief were *Samuel B. Goldstein*, *Deanne E. Maynard*, and *James R. Sigel*.

Before: MILLETT and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

2

Rao, *Circuit Judge*: Strike 3 Holdings, LLC, is a producer and distributor of adult films. This case arises out of a copyright infringement suit filed by Strike 3 against a "John Doe" defendant alleged to have illegally downloaded and distributed Strike 3's films. In its complaint, Strike 3 was able to identify the defendant only with an Internet Protocol (IP) address linked to numerous acts of online piracy. Strike 3 could not identify the defendant and effectuate service without subpoenaing the defendant's Internet service provider (ISP) and so moved the district court for a court order under Federal Rule of Civil Procedure 26(d)(1). The district court denied the Rule 26(d)(1) motion and dismissed Strike 3's complaint without prejudice.

While district courts enjoy substantial discretion with respect to discovery matters, that discretion is not unbounded. We hold that the district court abused its discretion by assigning improper weight to what it viewed as the "aberrantly salacious nature" of Strike 3's films, by concluding that Strike 3 could not state a plausible claim for infringement against the IP address subscriber, and by drawing unsupported, negative inferences against Strike 3 regarding its litigation tactics. We therefore reverse the district court's order and remand for further proceedings consistent with this opinion.

I.

Strike 3 distributes pornographic films through various adult websites and owns the copyrights to the motion pictures distributed under four different brand names. According to Strike 3, its websites receive more than 20 million unique monthly visitors and tens of thousands of subscribers pay for its content.

Like many film distributors, however, the company also faces rampant online piracy. In an effort to combat illegal downloading and distribution of its films, Strike 3 has filed

3

thousands of copyright infringement lawsuits in district courts around the country.[1] These lawsuits follow a consistent pattern: Strike 3 works with a third-party forensic investigator to monitor the BitTorrent peer-to-peer file sharing network for the presence of Strike 3's copyrighted works. *See AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) (describing online piracy via the BitTorrent protocol). Utilizing forensic software, the investigator can record a specific IP address engaging in a specific act of infringement at a specific time. Once an infringing IP address is identified, Strike 3 uses geolocation technology to determine where the registered subscriber of that IP address is located. Armed with this information, Strike 3 files a copyright infringement lawsuit in the appropriate federal district court, naming the "John Doe" subscriber of the offending IP address as the defendant.

This appeal concerns a typical infringement lawsuit filed by Strike 3. Using the technology described above, Strike 3's investigators recorded IP address 73.180.154.14 illegally distributing Strike 3's films via the BitTorrent network on twenty-two separate occasions over the course of approximately one year. Strike 3 determined that this IP

---

[1] Strike 3 has also sought to reduce piracy through other means, including by utilizing the procedures set out in the Digital Millennium Copyright Act (DMCA). Under the DMCA, a copyright owner who believes material posted online infringes its copyright may file a takedown notice with the relevant ISP, requesting that the ISP remove the allegedly infringing material from its web server. *See generally* 17 U.S.C. § 512. Strike 3 states that it "send[s] on average 50,000 Digital Millennium Copyright Act notices a month" to ISPs alerting them of infringement by their customers. Lansky Decl. ¶ 26, App. 16. According to Strike 3, these efforts have proven futile, as have "similar efforts by both the motion picture and recording industries" to utilize DMCA takedown notices to combat piracy. Strike 3 Br. 1.

4

address is registered to a subscriber located in the District of Columbia. In June 2018, the company filed a complaint against the IP address subscriber in the U.S. District Court for the District of Columbia. Because Internet service providers are the only entities that can link an IP address to its subscriber, Strike 3 could not serve its complaint without first subpoenaing the subscriber's ISP, Comcast, for information identifying the anonymous defendant. Accordingly, the company also filed a Rule 26(d)(1) motion seeking leave to subpoena Comcast for records identifying the John Doe IP address subscriber.

In its Rule 26(d)(1) motion, Strike 3 argued it has good cause to issue this subpoena because its lawsuit cannot proceed without the requested discovery and because it would be improper for the court to dismiss the claims before Strike 3 has the opportunity to engage in discovery to learn the defendant's identity. Strike 3 further averred that it limits infringement lawsuits to "strong cases against extreme infringers" who "not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content." App. 34. Finally, the company stated it is mindful of the sensitive nature of the litigation and encouraged the district court to issue a protective order allowing the defendant to proceed anonymously.

The district court denied Strike 3's discovery motion. *See Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018). Applying a multi-factor balancing test adopted by the Second Circuit in *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), the district court found that Strike 3's need for the subpoenaed information was outweighed by the "potentially-noninfringing defendant's right to be anonymous"—a privacy interest the court found especially weighty given the "particularly prurient pornography" at issue. *Strike 3*, 351 F. Supp. 3d at 163, 164–65. The court

5

acknowledged Strike 3's lawsuit could not proceed without the requested discovery, but explained that "Strike 3's flawed identification method" of relying on geolocation technology and IP address tracking to identify infringers "fail[ed] to give the court adequate confidence this defendant actually did the infringing." *Id.* at 164. In particular, the court emphasized the risk that someone other than the IP address subscriber with access to the IP address—such as a family member or roommate—may have been responsible for the alleged infringement. *Id.* at 162.

While the district court recognized that "honest copyright holder[s] might balk" at its decision, which could curtail efforts to combat online piracy through direct infringement claims, it expressly cabined its holding to the "exceptional" circumstances of this case. *Id.* at 165–66. The court pointed to two factors limiting its holding: First, the "aberrantly salacious nature" of Strike 3's films, and second, the "legion pitfalls associated with Strike 3's tracking and identification of infringers." *Id.* at 165. "Given these high stakes," the court refused to "accept the risk of misidentification" and denied Strike 3's Rule 26(d)(1) motion. *Id.* But the court left open the possibility that a future copyright holder could obtain a different result by "show[ing] the Court a method to identify infringers with sufficiently less risk of false accusations." *Id.* The district court then explained that Strike 3's resulting "inability to identify [the] defendant [made] effectuating service or prosecuting the case impossible." *Id.* Accordingly, it dismissed the complaint without prejudice.

Throughout its opinion, the district court expressed skepticism towards Strike 3's motivation in suing the John Doe defendant. The court characterized Strike 3 as a "copyright troll" that has "flood[ed]" district courts around the country with thousands of lawsuits "smacking of extortion," and

6

declared that it would not indulge Strike 3's "feigned desire for legal process" by "oversee[ing] a high-tech shakedown." *Id.* at 161–62, 166.

Strike 3 filed a timely appeal. In the absence of a named defendant, we appointed amicus to present arguments in support of the district court's order. Amicus has fulfilled that role admirably.

II.

Federal Rule of Civil Procedure 26(d)(1) provides in relevant part that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized … by court order." FED. R. CIV. P. 26(d)(1). In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, "the only potential avenue for discovery is [a court order under] Rule 26(d)(1)." *AF Holdings*, 752 F.3d at 995. A district court's discretion to order discovery, whether before or after the parties have conferred, is cabined by Rule 26(b)'s general limitations on the scope of discovery. Under Rule 26(b), a party may obtain discovery only of nonprivileged materials that are "relevant to [the] party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Courts are directed to assess proportionality by reference to several factors, including "the parties' relative access to relevant information" and "the importance of the discovery in resolving the issues [at stake in the action]." *Id.*[2]

---

[2] Prior to 2015, Rule 26(b) included a "good cause" standard for court-ordered discovery. *See* FED. R. CIV. P. 26(b)(1) (2015) ("For

7

As we have repeatedly recognized, district courts have broad discretion over the structure, timing, and scope of discovery. *See, e.g.*, *Hussain v. Nicholson*, 435 F.3d 359, 363–64 (D.C. Cir. 2006). Accordingly, we will overturn a district court's discovery ruling only in "unusual circumstances" amounting to an abuse of discretion. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). At the same time, we must take care to ensure that "discretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Taylor*, 487 U.S. 326, 336 (1988) (citation and quotation marks omitted). Where a district court rests its discovery ruling "on an improper factor," *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 164 (D.C. Cir. 2015) (citation omitted), or an error of law, *AF Holdings*, 752 F.3d at 994, it necessarily falls short of this standard.

In this case, Strike 3 contends that the district court abused its discretion by relying heavily on the company's litigation history and the content of its films rather than the relevant legal

---

good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). The 2015 amendments to the Rules eliminated Rule 26(b)'s good cause requirement and replaced it with the overarching relevance and proportionality standard discussed above. The district court nonetheless assumed court-ordered discovery remains subject to a good cause requirement and went on to analyze good cause through the lens of the Second Circuit's *Arista Records* test. *Strike 3*, 351 F. Supp. 3d at 162–63 (citing *Arista Records*, 604 F.3d at 119).

We find the district court's denial of Strike 3's Rule 26(d)(1) motion was an abuse of discretion under any applicable standard. Therefore we do not apply the *Arista Records* test, nor do we address whether *Arista Records* sets out an appropriate framework for analyzing such motions or whether the "good cause" standard continues to apply under the current version of Rule 26.

8

standards under Rule 26 and Rule 12(b)(6). We agree, and find that three aspects of the district court's analysis require us to reverse its decision: First, the district court "relied on an improper factor" by treating the content of Strike 3's copyrighted works as relevant to its entitlement to early discovery. *Radtke*, 795 F.3d at 164. Second, the court committed legal error when it concluded Strike 3 could not state a plausible claim of infringement against the IP address subscriber even if the requested discovery was granted. And third, the court drew unsupported, negative inferences against Strike 3 regarding its litigation tactics and motivation in seeking the requested discovery. We take each issue in turn.

A.

We first consider Strike 3's argument that the district court gave improper weight to the content of Strike 3's films in denying its Rule 26(d)(1) motion. From the outset, the district court made clear that its assessment of the Rule 26(d)(1) motion was informed by the pornographic content of Strike 3's films. The district court analyzed Strike 3's discovery motion by balancing the parties' relative interests. The court assigned "great weight" to the John Doe's privacy expectations in this case, reasoning that the potential impact of a false accusation on the defendant's personal and professional life would be dire in a case involving "particularly prurient pornography." *Strike 3*, 351 F. Supp. 3d at 164–65. Given these purportedly "high stakes," which the court viewed as "unlikely to appear in more typical [copyright] cases," the court held that "the risk of misidentification" was too great to justify granting Strike 3 the requested discovery. *Id.* at 165. The court emphasized, however, that its holding was limited by the fact that this case involved "aberrantly salacious" content. *Id.* ("[T]he typical

9

case does not involve pornography, nor is this even run-of-the-mill porn.").[3]

The district court suggested in effect that Strike 3's ability to defend its copyright turned on the content of its films. This reasoning is not supported by the relevant legal standards. Even assuming without deciding that privacy interests have continuing relevance to the Rule 26(d)(1) analysis, *see supra* note 2, none of the cases cited by the district court suggest that privacy interests vary depending on the content of a particular copyrighted work. Nor has amicus identified any authority for the proposition that content-based distinctions bear on a copyright plaintiff's entitlement to discovery in general. To the contrary, as the district court correctly recognized, "defendants have little expectation of privacy in downloading and distributing copyrighted [content] without permission." *Strike 3*, 351 F. Supp. 3d at 164 (citation omitted). The mere fact that a defendant may be embarrassed to have his name connected to pornographic websites is not a proper basis on which to diminish a copyright holder's otherwise enforceable property rights. Indeed, as one district court aptly observed, "while there may be some social stigma attached to consuming pornography ... it is [nonetheless] the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove." *Strike 3 Holdings, LLC v. Doe*, 2019 WL 4745360, at *6 (D.N.J. Sept. 30, 2019) (citation and quotation marks omitted).

Amicus offers little substantive defense for the district court's focus on the content of Strike 3's films, choosing instead to downplay the impact the films' content had on the court's analysis. *See* Amicus Br. 39 ("The district court applied the same standard that courts apply for other content.").

---

[3] The district court did not provide any support for its conclusion that Strike 3's films are "aberrantly salacious."

10

Beyond that, amicus merely observes—incorrectly—that "[t]here is nothing improper in recognizing that privacy interests differ depending on whether the accusations involve content from [pornographic websites] rather than from some other source." *Id.*

Basic copyright principles establish that a plaintiff's ability to defend its copyrights cannot turn on a court's subjective view of the copyrighted material. The fundamental premise of copyright law is that the owner of a valid copyright has a protectable property interest in its creative works. *See, e.g.*, *Dowling v. United States*, 473 U.S. 207, 216–17 (1985). Once a copyright is registered, the owner "may seek judicial enforcement" of his property rights against subsequent infringers." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 596 (4th Cir. 2013). And a copyright holder's ability to defend this property interest does not turn on the subjective value judgments of a particular judge. *Cf. Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903) (Holmes, J.) ("It would be a dangerous undertaking for persons trained only [in] the law to constitute themselves final judges of the worth of pictorial illustrations."); *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 60 (1st Cir. 2009).

Here, the district court found that "Strike 3's alleged ownership of an infringed copyright sets forth a prima facie claim." *Strike 3*, 351 F. Supp. 3d at 164. Having accepted Strike 3's allegations of copyright ownership, the district court could not weaken the property rights attached to that ownership by

11

imposing a content-based restriction on Strike 3's access to discovery.[4]

For the reasons stated, we hold that the content of a copyrighted work is *per se* irrelevant to a Rule 26(d)(1) motion seeking discovery to identify an anonymous infringer. The protections afforded by copyright law do not turn on a copyright holder's popularity or perceived respectability. Accordingly, we find the district court abused its discretion by factoring the pornographic content of Strike 3's films into its decision to deny Strike 3's discovery request.

### B.

Strike 3 also contends that the district court erred when it found that Strike 3's subpoena would not "identify a copyright infringer who can be sued." *Strike 3*, 351 F. Supp. 3d at 164. By the district court's account, merely identifying the IP address subscriber would not enable Strike 3 to state a plausible claim against that subscriber—rather, Strike 3 would have to "resort[] to far more intensive discovery machinations sufficiently establishing defendant did the infringing." *Id.* Because the district court believed Strike 3 would have no prospect of surviving a Rule 12(b)(6) motion even if it learned the subscriber's identity, the court concluded that Strike 3 should not be permitted to discover the subscriber's identity at all.

This reasoning is flawed in two critical respects. As an initial matter, it misstates the relevant inquiry when a plaintiff seeks immediate, court-ordered discovery to identify an

---

[4] Although the district court intimated that pornography may not be entitled to copyright protection, *Strike 3*, 351 F. Supp. 3d at 165 n.5, that question is not before us as the district court found that Strike 3 stated a valid claim of copyright ownership.

12

anonymous defendant. At this stage, the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place. It is well established that plaintiffs are permitted to proceed against John Doe defendants so long as discovery can be expected to uncover the defendant's identity. *See Newdow v. Roberts*, 603 F.3d 1002, 1010–11 (D.C. Cir. 2010) (citation omitted). That is precisely what Strike 3 seeks here: the discovery necessary to reveal the defendant's identity and to begin litigating its infringement claims.

This is not to suggest that the quality of a plaintiff's allegations has no bearing on a Rule 26(d)(1) motion. As with all discovery requests, courts must look carefully to the complaint's allegations to determine if the requested discovery is relevant and proportional to the needs of the case. *See* FED. R. CIV. P. 26(b)(1). In *AF Holdings*, for example, we rejected a plaintiff's attempt to rely on Rule 26(d)(1) to uncover the identities of hundreds of John Doe defendants with no apparent connection to the district in which the plaintiff had sued. 752 F.3d at 995–96. Given that the plaintiff could not make even a threshold showing of personal jurisdiction, "there [was] little reason to believe that the information sought [would] be 'relevant to the subject matter involved in the action.'" *Id.* at 995 (quoting FED. R. CIV. P. 26(b)(1) (2015)). In other words, if a plaintiff plainly has no "realistic chance of successfully suing" the defendant, we will not allow the plaintiff to "abuse[] the discovery process" by seeking irrelevant information. *Id.* at 997. But the mere possibility that an unnamed defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards.

13

The district court's analysis also misconstrued the pleading burden at the Rule 12(b)(6) phase. The court maintained that Strike 3 would need to engage in "far more intensive discovery … sufficiently establishing defendant did the infringing" in order to state a plausible claim. *Strike 3*, 351 F. Supp. 3d at 164. At this stage, however, a plaintiff "need not set out all of the precise facts on which the claim is based." *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d 339, 345 (D.C. Cir. 2018) (citation omitted). Nor must the plaintiff prove its ultimate claim. *See Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) ("A Rule 12(b)(6) motion to dismiss … does not require a court to assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint." (citation and quotation marks omitted)). To the contrary, "'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely,'" the judge must accept the complaint's well-pleaded allegations as true and "draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In this case, Strike 3 asserts that it has used a combination of forensic and geolocation technology to tie a single IP address, registered to a user in the District of Columbia, to twenty-two acts of infringement on specified dates over the course of a year. Based on these allegations, a court could reasonably infer that someone with prolonged, continuous access to this IP address was responsible for the alleged infringement. Viewing the allegations in the light most favorable to Strike 3, we think it at least plausible that the registered IP address subscriber "actually did the infringing." *Strike 3*, 351 F. Supp. 3d. at 164.

14

Amicus contends that the district court's reasoning was correct because there is an "obvious alternative explanation" for the John Doe's alleged conduct: that someone else with access to the IP address in question committed the alleged infringement. Amicus Br. 25–26 (quoting *Twombly*, 550 U.S. at 567–68). It is undoubtedly true that individuals other than the IP address subscriber may have been responsible for the infringement at issue. On these facts, however, we do not find this alternative explanation so obvious as to render Strike 3's claim against the subscriber facially implausible. *Cf. In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 57 (D.C. Cir. 2019) (distinguishing cases where a defendant's "obvious alternative explanations were necessarily incompatible with the plaintiffs' versions of events").

For similar reasons, amicus's reliance on the Ninth Circuit's decision in *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018), is misplaced. In *Cobbler Nevada*, a copyright holder's complaint against an IP address subscriber was dismissed under Rule 12(b)(6)—but only *after* the plaintiff was permitted to subpoena the defendant's ISP. *Id.* at 1145. Indeed, the district court in *Cobbler Nevada* granted the plaintiff leave not only to issue its subpoena, but to depose the subscriber once he was identified. *Id.* This preliminary discovery revealed that the IP address was registered to an individual who operated an adult foster care home where numerous residents and visitors had access to the same Internet service and IP address. *Id.* at 1144–45. After these facts came to light and the plaintiff failed to plead any additional facts linking the defendant to the alleged infringement, the case was dismissed. Under those circumstances, the Ninth Circuit found, the defendant's "status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer." *Id.* at 1145.

15

Here, by contrast, Strike 3 has not even been able to gather such threshold facts about the alleged infringer. To be sure, the requested discovery may ultimately cast doubt on Strike 3's claim against the IP address subscriber. For example, the subpoenaed records could reveal that the IP address is associated with a coffee shop, a public library, or, as in *Cobbler Nevada*, a residential facility where numerous users access the same Internet service. *See id.* at 1146. At that point, if Strike 3 is unable to plead additional facts tying the registered subscriber to the alleged infringement, the scales may tilt towards implausibility.[5] At this stage, however, we cannot know what Strike 3's subpoena will uncover. The mere fact that discovery *may* demonstrate that the subscriber is not the proper defendant is no basis to close the courthouse doors before Strike 3 can step inside.

Finally, the district court's opinion implied that its perception of Strike 3's films may have colored not only its assessment of the Rule 26(d)(1) motion, but the merits of Strike 3's claims. The district court explicitly stated that it "w[ould] not accept the risk of misidentification" *in this particular context*. *Strike 3*, 351 F. Supp. 3d at 165. This suggests the court may have taken a different view of the strength of Strike 3's allegations but for its perception of the "aberrantly salacious nature" of Strike 3's films. *Id.* For the same reasons set out in Part II.A, *supra*, the plausibility of a plaintiff's allegations against an anonymous IP address subscriber does not vary depending on the content of the copyrighted work at issue.

---

[5] Counsel for Strike 3 conceded at oral argument that it would be difficult to state a plausible claim against an IP address subscriber associated with a public facility, and further maintained that the company would "immediately dismiss" a lawsuit under those circumstances. Oral Arg. Tr. 11:12–22.

16

On the allegations before us, we cannot conclude there is no "realistic chance" the discovery Strike 3 sought will yield information relevant to its suit or that Strike 3 could not state a plausible claim against the IP address subscriber if the suit reaches the Rule 12(b)(6) phase. *See AF Holdings*, 752 F.3d at 997. Because the district court's contrary conclusion was predicated on an error of law, we hold the court abused its discretion in denying Strike 3's Rule 26(d)(1) motion.

## C.

Lastly, we turn to Strike 3's argument that the district court failed to afford Strike 3 the benefit of all reasonable inferences, and instead relied on extra-record sources to question Strike 3's motivation in seeking the requested discovery. We find the district court abused its discretion in this regard as well.

As already explained, the district court was required to assume the truth of Strike 3's factual allegations and draw all reasonable inferences in its favor. *See Banneker Ventures*, 798 F.3d at 1129. It failed to do so. Instead, the court went outside the record to conduct an in-depth review of Strike 3's publicly available court filings, and relied on this research to conclude that Strike 3 is engaged in a pattern of coercive litigation designed to extract shame settlements rather than identify actual infringers. *Strike 3*, 351 F. Supp. 3d at 162, 166. The district court dubbed Strike 3 a "copyright troll," *id.* at 161–62, "[a]rmed with hundreds of cut-and-pasted complaints and boilerplate discovery motions," *id.* at 166. It accused Strike 3 of not caring "whether defendant actually did the infringing," and instead seeking simply to "settle as many claims as possible [and] abandon the rest." *Id.* at 162. And it found that Strike 3's Rule 26(d)(1) motion reflected a "feigned desire for legal process" that "masks what it really seeks: for the Court to oversee a high-tech shakedown." *Id.* at 166.

17

The facts before the district court did not support these conclusions. It is true, as the district court pointed out, that Strike 3 filed nearly 2,000 copyright lawsuits in courts around the country in the thirteen months leading up to the district court's decision. Strike 3 does not dispute this figure. It argues, however, that the volume of its litigation is dwarfed by the scale of infringement it faces. Indeed, Strike 3 maintains that although its films "are among the most pirated content in the world," Compl. ¶ 16, App. 4, it has pursued "less than 1 out of 1,000 US-based Strike 3 infringers" via litigation, Strike 3 Br. 19 n.18. Strike 3 further contends that no negative inference can be drawn from the fact that many of these lawsuits settle or otherwise do not proceed beyond the initial stages of litigation, given the established principle that "parties are free to settle their disputes on their own terms." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).

Amicus, on the other hand, argues that Strike 3's "litigation conduct across a large volume of cases and its consistent pattern of never pursuing any case to judgment on the merits" provided ample basis for the district court to infer that Strike 3 sought discovery for a reason other than defending its copyrights. Amicus Br. 29. According to amicus, the district court acted appropriately in exercising its authority to take judicial notice of Strike 3's litigation pattern and in relying on that pattern to infer that Strike 3 seeks hasty settlements rather than successful litigation.

We do not dispute that district courts may properly take judicial notice of proceedings and filings in other courts. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981). A court cannot, however, reasonably infer that a plaintiff lacks a legitimate motive in pursuing discovery based solely on the plaintiff's litigation volume and case history. Where, as here, a plaintiff alleges that it is the victim of copyright infringement

18

on a massive scale, the mere fact that it has filed a significant number of lawsuits is not a valid basis on which to impute an improper purpose. Nor is the fact that many such lawsuits settle or are dismissed at an early stage necessarily suggestive of improper intent. *Cf. Frank*, 139 S. Ct. at 1046.

In its briefing and at oral argument, amicus relied heavily on our decision in *AF Holdings* to support the district court's assessment of Strike 3's litigation tactics. That case provides a poor analogy. *AF Holdings* involved a law firm that multiple courts had found to be associated with a long pattern of abusive copyright litigation. *See* 752 F.3d at 992–93. The law firm in question formed a holding company, acquired the copyrights to several pornographic films, and "initiated massive 'John Doe' copyright infringement lawsuits" against hundreds of IP address subscribers in a single district court in an effort to minimize filing fees. *Id.* at 992. This particular pattern, coupled with AF Holdings' failure to tailor its discovery requests to individuals who could conceivably be sued in the district, made it reasonable for the court to conclude that the company sought to "manipulate judicial procedures to serve [its] own improper ends" rather than pursue a legitimate litigation interest. *Id.*

This case involves markedly different facts. Strike 3's filings aver that it produced the copyrighted materials at issue, persistently seeks to protect its copyrights through the procedures set out in the Digital Millennium Copyright Act, and resorted to civil litigation only after countless DMCA takedown notices failed to stem the tidal wave of infringement. *See* Lansky Decl. ¶¶ 26–27, App. 16 (noting that DMCA notices have "do[ne] virtually nothing to stop the rampant copyright infringement," making "lawsuits like this one" the "only effective way to stop … piracy"). Unlike the scattershot approach undertaken in *AF Holdings*, Strike 3 utilized technology to target individual serial infringers in the

19

appropriate district court. At this stage of the litigation, Strike 3 was entitled to have the court accept these allegations as true and draw all reasonable inferences in Strike 3's favor.

While the district court did not explicitly refer to Strike 3's litigation conduct when analyzing the Rule 26(d)(1) motion, the court's perception of Strike 3's motives appears to have colored its analysis. Indeed, the court took pains to emphasize that a different result might obtain in a case involving an "honest copyright holder," *Strike 3*, 351 F. Supp. 3d at 165, and derided Strike 3's "feigned desire for legal process" in summarizing its holding, *id.* at 166. The factual record did not support the negative inferences drawn. We therefore hold that the district court abused its discretion by failing to apply the appropriate legal standards to Strike 3's complaint.

*   *   *

For the foregoing reasons, the district court's denial of Strike 3's Rule 26(d)(1) motion must be reversed. The district court's decision to dismiss Strike 3's complaint without prejudice was predicated entirely on its denial of the Rule 26(d)(1) motion. *See id.* at 165 ("Denying Strike 3's discovery motion dooms its claim."). Because we find that the district court abused its discretion in denying Strike 3's discovery motion, its dismissal for failure to state a claim is also reversed.

While we do not lightly intercede in a district court's management of the discovery process, this case represents the rare circumstance in which the district court exceeded its substantial discretion. We therefore reverse the district court's order and remand for further proceedings consistent with this opinion.

*So ordered.*